**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| NEPHROGENEX, INC., | : | Case No. 16-11074 (KG) |
| Debtor.[1] | : | |

# PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR

**COLE SCHOTZ P.C.**
David R. Hurst (I.D. No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131

– and –

Jacob S. Frumkin
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000

*Counsel for the Debtor and Debtor-in-Possession*

Dated: Wilmington, Delaware
February 17, 2017

[1] The last four digits of the Debtor's federal tax identification number are 5171. The mailing address for the Debtor is P.O. Box 400, Jamison, Pennsylvania 18929.

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

ARTICLE I
DEFINITIONS AND RULES OF INTERPRETATION ..... 1
A. Rules of Construction ..... 1
B. Definitions ..... 1
C. Rules of Interpretation ..... 13
D. Computation of Time ..... 14
E. Governing Law ..... 14

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS ..... 14
A. Introduction ..... 14
B. Unclassified Claims ..... 15
1. Administrative Claims ..... 15
2. Priority Tax Claims ..... 15
C. Unimpaired Classes of Claims ..... 15
1. Class 1: Miscellaneous Secured Claims ..... 15
2. Class 2: Priority Non-Tax Claims ..... 15
D. Impaired Classes of Claims ..... 15
1. Class 3: General Unsecured Claims ..... 15
2. Class 4: Medpace Claim ..... 15
3. Class 5: Subordinated 510(c) Claims ..... 15
4. Class 6: Subordinated 510(b) Claims ..... 15
E. Impaired Class of Interests ..... 15
1. Class 7: Interests ..... 15

ARTICLE III
TREATMENT OF CLAIMS AND INTERESTS ..... 16
A. Unclassified Claims ..... 16
1. Administrative Claims ..... 16
2. Priority Tax Claims ..... 16
B. Unimpaired Claims ..... 16
1. Class 1: Miscellaneous Secured Claims ..... 16
2. Class 2: Priority Non-Tax Claims ..... 17
C. Impaired Claims ..... 17
1. Class 3: General Unsecured Claims ..... 17
2. Class 4: Medpace Claim ..... 17
3. Class 5: Subordinated 510(c) Claims ..... 17
4. Class 6: Subordinated 510(b) Claims ..... 18
D. Interests ..... 18
1. Class 7: Interests ..... 18
E. Special Provision Regarding Unimpaired Claims ..... 18
F. Allowed Claims ..... 18




55151/0001-14054897v6

ARTICLE IV
ACCEPTANCE OR REJECTION OF THE PLAN ..... 18
A. Acceptance by an Impaired Class ..... 18
B. Presumed Acceptances by Unimpaired Classes ..... 19
C. Classes Deemed to Reject Plan ..... 19
D. Impaired Class of Claims Entitled to Vote ..... 19
E. Vacant Classes ..... 19
F. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ..... 19

ARTICLE V
MEANS FOR IMPLEMENTATION OF THE PLAN ..... 19
A. Corporate Action ..... 19
1. Continued Corporate Existence ..... 19
2. Cancellation of Existing Securities and Agreements ..... 20
3. Certificate of Incorporation and Bylaws ..... 20
4. Authorization and Issuance of New Common Stock ..... 20
5. Directors and Officers of Reorganized Debtor ..... 20
6. No Further Action ..... 21
B. Books and Records; Privilege Matters ..... 21
1. Legal Representation of the Debtor After the Effective Date ..... 21
2. Transfer of Debtor's Books and Records ..... 21
3. Transfer of Evidentiary Privileges; Document Requests ..... 21
C. The Liquidating Trust ..... 22
1. Establishment and Administration of the Liquidating Trust ..... 22
2. Assets of the Liquidating Trust ..... 23
3. Other Funds to be Transferred to the Liquidating Trust ..... 23
4. Rights and Powers of the Liquidating Trust and the Liquidating Trustee ..... 23
5. Liquidating Trust Interests ..... 24
6. Appointment of a Liquidating Trustee ..... 24
7. Indemnification of Liquidating Trustee and Certain Other Parties ..... 25
8. Distributions to Holders of Allowed General Unsecured Claims ..... 25
9. Distributions to Holders of Administrative and Priority Claims ..... 26
10. Distributions to Medpace ..... 26
D. Vesting of Assets; Release of Liens ..... 26
E. Accounts and Reserves ..... 26
1. Professional Fee Reserve ..... 26
2. Administrative Claims Reserve ..... 27
3. Other Reserves ..... 27
F. Exemption from Certain Transfer Taxes ..... 28
G. Applicability of Section 1145 of the Bankruptcy Code ..... 28
H. Preservation of Causes of Action ..... 28
I. Effectuating Documents; Further Transactions ..... 29
J. Certain Obligations of Reorganized Debtor ..... 29

ARTICLE VI
PROVISIONS GOVERNING DISTRIBUTIONS ..... 29
A. Distributions on Allowed Claims ..... 29
B. Disbursing Agent ..... 29
C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ..... 30
1. Delivery of Distributions in General ..... 30
2. Undeliverable and Unclaimed Distributions ..... 30

D. Means of Cash Payment ........ 31
E. Interest on Claims ........ 31
F. Withholding and Reporting Requirements ........ 31
G. Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims ........ 32
1. Objection Deadline; Prosecution of Objections ........ 32
2. No Distributions Pending Allowance ........ 33
3. Disputed Claims Reserve ........ 33
4. Distributions After Allowance ........ 33
5. De Minimis Distributions ........ 33
6. Fractional Dollars ........ 34
7. Allocation of Plan Distributions Between Principal and Interest ........ 34
8. Distribution Record Date ........ 34

ARTICLE VII
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 34
A. Rejected Contracts and Leases ........ 34
B. Rejection Damages Bar Date ........ 35
C. Indemnification Obligations ........ 35
D. Confidentiality Obligations Owed to Debtor ........ 35
E. Treatment of Insurance Policies ........ 35

ARTICLE VIII
CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........ 36
A. Conditions to Confirmation ........ 36
B. Conditions to Occurrence of the Effective Date ........ 36
C. Waiver of Conditions ........ 37
D. Consequences of Non-Occurrence of Effective Date ........ 37

ARTICLE IX
ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ........ 38
A. Professional Fee Claims ........ 38
1. Final Fee Applications ........ 38
2. Employment of Professionals after the Effective Date ........ 38
B. Substantial Contribution Compensation and Expenses Bar Date ........ 38
C. Other Administrative Claims ........ 38
D. Medpace Administrative Claim ........ 39

ARTICLE X
EFFECTS OF CONFIRMATION ........ 39
A. Compromise and Settlement of Claims and Controversies ........ 39
B. Binding Effect ........ 39
C. Discharge of the Debtor ........ 39
D. Releases and Exculpation ........ 40
1. Releases by the Debtor ........ 40
2. Mutual Releases by Debtor and Medpace ........ 40
3. Exculpation and Limitation of Liability ........ 41
E. Injunction ........ 42

ARTICLE XI
RETENTION OF JURISDICTION .......... 43
A. Retention of Jurisdiction by the Court .......... 43
B. Failure of Court to Exercise Jurisdiction .......... 45

ARTICLE XII
MISCELLANEOUS PROVISIONS .......... 45
A. Modifications and Amendments .......... 45
B. Severability of Plan Provisions .......... 45
C. Successors and Assigns .......... 46
D. Payment of Statutory Fees .......... 46
E. Revocation, Withdrawal or Non-Consummation .......... 46
F. Service of Documents .......... 46
G. Plan Supplement(s) .......... 48

# EXHIBITS

| Exhibit | Title |
|---|---|
| A | Form of Certificate of Incorporation of Reorganized NephroGenex |
| B | Form of Bylaws of Reorganized NephroGenex |
| C | Form of Liquidating Trust Agreement |

# INTRODUCTION[2]

NephroGenex, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 Case, hereby proposes the following plan of reorganization for resolution of its outstanding creditor Claims and equity Interests. Reference is made to the Disclosure Statement distributed contemporaneously herewith, for a discussion of the Debtor's history, business, properties, operations, the Chapter 11 Case, risk factors, a summary of the Plan and certain other related matters. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

All Holders of Claims that are eligible to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and Article XII.A of the Plan, the Debtor reserves the right to alter, amend, modify (one or more times), revoke or withdraw the Plan prior to its substantial consummation.

# ARTICLE I

# DEFINITIONS AND RULES OF INTERPRETATION

## A. Rules of Construction

For purposes of the Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

## B. Definitions

1.1 **"503(b)(9) Claim"** means a Claim arising under section 503(b)(9) of the Bankruptcy Code against the Debtor, which were to be Filed against the Debtor on or before the 503(b)(9) Claims Bar Date.

1.2 **"503(b)(9) Claims Bar Date"** means July 8, 2016 at 5:00 p.m. (Eastern Time) as established by the Bar Date Order.

1.3 **"Administrative and Priority Claims Estimate"** means, as of the Effective Date, the greater of (i) the estimated amount, exclusive of Professional Fee Claims, of all unpaid Claims that will be Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed

---

[2] Capitalized terms used in this Introduction shall have the meanings ascribed to such terms in Article I hereof.

Priority Non-Tax Claims; and (ii) the amount of Effective Date Cash, less the sum of (a) the amount of the Professional Fee Reserve and (b) the Liquidating Trust Funding Amount.

**1.4 "Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority in payment under sections 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and Claims by Governmental Units for taxes accruing after the Petition Date (but excluding Claims related to taxes accruing on or before the Petition Date); (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; (d) obligations designated as Administrative Claims pursuant to an order of the Court; and (e) 503(b)(9) Claims.

**1.5 "Administrative Claims Bar Date"** means for Administrative Claims, other than 503(b)(9) Claims and Professional Fee Claims, the date that falls on the thirtieth (30th) day following the Effective Date, in each case by which Holders of Administrative Claims shall File with the Claims Agent and serve on the Liquidating Trustee and Medpace requests for payment, in writing, together with supporting documents, substantially complying with the Bar Date Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**1.6 "Administrative Claims Objection Deadline"** means the deadline for filing objections to requests for payment of Administrative Claims Filed on or before the Administrative Claims Bar Date, which deadline shall be one hundred twenty (120) days after the Effective Date, unless otherwise extended by order of the Court.

**1.7 "Administrative Claims Reserve"** means the reserve of Cash funded by the Debtor and maintained by the Liquidating Trust for the benefit of Holders of Allowed Administrative Claims (exclusive of Holders of Professional Fee Claims, the reserve for which Holders shall be the Professional Fee Reserve), Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims in an amount equal to the Administrative and Priority Claims Estimate.

**1.8 "Affiliate"** means **"affiliate"** as defined in section 101(2) of the Bankruptcy Code.

**1.9 "Allowed"** means, when used in reference to a Claim within a particular Class, an Allowed Claim in the specified Class or of a specified type.

**1.10 "Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Court, (b) that has been Scheduled as a liquidated, non-contingent and undisputed Claim in an amount greater than zero in the Schedules, and the Schedules have not been amended with respect to such Claim on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court, (c) that is the subject of a timely Filed Proof of Claim and either (i) no objection to its allowance has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (ii) any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount (x) in

the Plan or (y) after the Effective Date, by the Liquidating Trustee in writing with the written consent of Medpace (which consent shall not be unreasonably withheld); provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable Bar Dates for such requests set by the Court (if such written request is required) in each case as to which (a) the Debtor or the Liquidating Trustee, as applicable, or any other party in interest (x) has not Filed an objection on or before the Administrative Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (y) has interposed a timely objection and such objection has been settled, waived through payment or withdrawn, or has been denied by Final Order, or (b) after the Effective Date, the Liquidating Trustee has expressly allowed in a liquidated amount in writing with the written consent of Medpace (which consent shall not be unreasonably withheld). For purposes of computing Distributions under the Plan, a Claim that has been deemed "Allowed" shall not include interest, fees, costs or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan.

**1.11 "Avoidance Actions"** means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor and its recovery, subordination, or other remedies that may be brought by and/or on behalf of the Debtor and its estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies arising under chapter 5 of the Bankruptcy Code, including, without limitation, sections 542, 544, 545, 547, 548, 549 and 550 thereof, or their state law analogs.

**1.12** "**Ballot**" means each of the ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims entitled to vote under Article IV.D hereof in connection with the solicitation of acceptances of the Plan.

**1.13 "Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

**1.14 "Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the Local Rules, as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

**1.15 "Bar Date"** means, with respect to any particular Claim, the specific date set by the Court as the last day for Filing Proofs of Claim against the Debtor in the Chapter 11 Case for that specific Claim.

**1.16 "Bar Date Order"** means the Order Pursuant to Sections 105(a), 501, 502, 503 and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 1009-2 and 2002-1(e) (I) Establishing Bar Dates for Filing Claims Against the Debtor and (II) Approving Form and Manner of Notice Thereof [Docket No. 66].

**1.17 "Books and Records"** means any and all books and records of the Debtor, including any and all documents and any and all computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books

and records or data, along with books and records of the Debtor maintained by or in the possession of third parties, wherever located.

**1.18 "Business Day"** means any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.19 "Cash"** means legal tender of the United States of America or equivalents thereof.

**1.20 "Causes of Action"** means any and all actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, through and including the Effective Date.

**1.21 "Chapter 11 Case"** means the chapter 11 case commenced by the Debtor and administered under case number 16-11074 (KG) in the Court.

**1.22 "Claim"** means a claim against the Debtor, whether or not asserted, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.23 "Claimholder"** means the Holder of a Claim.

**1.24 "Claims Agent"** means Kurtzman Carson Consultants LLC, or any successor thereto.

**1.25 "Claims Objection Deadline"** means the last day for filing objections to Claims (other than Disallowed Claims for which no objection or request for estimation is required), which day shall be one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Court.

**1.26 "Class"** means each category or group of Holders of Claims or Interests that has been designated as a class in Article III of the Plan.

**1.27 "Class 3 Base Payment Amount"** means Cash in the amount of $875,000, which is the aggregate estimated amount of Cash to be distributed to Holders of Class 3 General Unsecured Claims, before reduction to compensate for the effect of payment of cure payments arising from the assumption, if any, of Executory Contracts or Unexpired Leases pursuant to section 365 of the Bankruptcy Code.

**1.28 "Class 3 Payment Amount"** means the Class 3 Base Payment Amount, minus the amount of the Cure Adjustment.

**1.29 "Collateral"** means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to

avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.30** **"Confirmation"** means the entry of the Confirmation Order.

**1.31** **"Confirmation Date"** means the date of entry of the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

**1.32** **"Confirmation Hearing"** means the hearing(s) before the Court to consider confirmation of the Plan and related matters pursuant to section 1128 of the Bankruptcy Code, as such hearing(s) may be adjourned or continued from time to time.

**1.33** **"Confirmation Order"** means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Debtor and Medpace.

**1.34** **"Consummation"** means the occurrence of the Effective Date.

**1.35** **"Contingent"** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.36** **"Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Case.

**1.37** **"Creditor"** means any Person or Entity that holds a Claim against the Debtor.

**1.38** **"Cure Adjustment"** means the amount by which the Class 3 Base Payment Amount shall be reduced to reflect the effect of payment of cure payments arising from the assumption of Executory Contracts or Unexpired Leases pursuant to section 365 of the Bankruptcy Code, which amount shall be equal to the product of (i) the Class 3 Base Payment Amount and (ii) a fraction, the numerator of which is the sum of the Allowed amount(s) of the Claim(s) asserted in the Chapter 11 Case by the counterparty or counterparties to the executory contract(s) or unexpired lease(s) being assumed by the Reorganized Debtor, if any, and the denominator of which is the aggregate amount of all Allowed General Unsecured Claims.

**1.39** **"Debtor"** means NephroGenex, Inc.

**1.40** **"Disallowed"** means, when used in reference to a Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, (c) is not Scheduled, and as to which (i) no Proof of Claim has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, and (ii) no request for payment of an Administrative Claim has been Filed by the Administrative Claims Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or

(d) after the Effective Date, has been disallowed in a written agreement by and between the Liquidating Trustee and the Holder of such Claim.

**1.41 "Disbursing Agent"** means (a) on or prior to the Effective Date, the Debtor, and (b) after the Effective Date, the Liquidating Trustee; provided, however, that the Debtor or the Liquidating Trustee may, in its discretion, retain a third party to act as Disbursing Agent.

**1.42 "Disclosure Statement"** means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Court pursuant to the Solicitation Procedures Order, which shall be in form and substance reasonably acceptable to the Debtor and Medpace.

**1.43 "Disputed"** means, when used in reference to a Claim, a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim.

**1.44 "Disputed Claim Amount"** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to a Disputed Claim; (ii) an amount agreed to by the Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Claim is estimated by the Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Court with respect to such Disputed Claim; or (c) if the Claim is a Disallowed Claim, zero.

**1.45 "Disputed Claims Reserve"** means the reserve established and maintained by the Liquidating Trust pursuant to and in accordance with the terms of the Liquidating Trust Agreement for the payment of Disputed Claims that become Allowed Claims after the Effective Date. The Disputed Claims Reserve need not be maintained by the Liquidating Trust in a segregated account.

**1.46 "Distribution"** means the distributions to be made by the Disbursing Agent in accordance with the Plan of, as the case may be: (a) Cash or (b) any other consideration or residual value distributed to Holders of Allowed Claims under the terms and provisions of the Plan.

**1.47 "Distribution Date"** means the Effective Date or the date, occurring as soon as reasonably practicable after the Effective Date, on which the initial Distributions are made to Holders of Allowed Claims.

**1.48 "Distribution Record Date"** means the record date for the purpose of determining Holders of Allowed Claims entitled to receive Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order or any subsequent Court order.

**1.49 "Effective Date"** means the first Business Day on which all conditions to the Consummation of the Plan set forth in Article VIII.B hereof have been satisfied or waived in accordance with Article VIII.C.

**1.50 "Effective Date Cash"** means all Cash of the Debtor as of the Effective Date.

**1.51 "Effective Date Free Cash"** means all Effective Date Cash, other than Cash required to fund the Administrative Claims Reserve and the Professional Fee Reserve.

**1.52 "Entity"** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.53 "Estate"** means the estate of the Debtor created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case on the Petition Date.

**1.54 "Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.55 "Exhibit"** means an exhibit attached either to the Plan or the Disclosure Statement.

**1.56 "Face Amount"** means (i) when used in reference to a Disputed or Disallowed Claim, the Disputed Claim Amount, and (ii) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

**1.57 "Fee Application Objection Parties"** has the meaning ascribed to such term in Article IX.A.1 of the Plan.

**1.58 "File," "Filed"** or **"Filing"** means, respectively, file, filed or filing with the Court or its authorized designee in the Chapter 11 Case.

**1.59 "Final Fee Applications"** has the meaning ascribed to such term in Article IX.A.1 of the Plan.

**1.60 "Final Order"** means an order of the Court (x) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (y) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (z) in the event that an appeal, writ of certiorari, reargument, rehearing or new trial has been sought, as to which (i) such order of the Court shall have been affirmed by the highest court to which such order is appealed, (ii) certiorari has been denied as to such order, or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

**1.61 "General Bar Date"** means July 8, 2016 at 5:00 p.m. (Eastern Time) for Claims arising on or before the Petition Date, including General Unsecured Claims, Priority Non-Tax Claims and 503(b)(9) Claims, as established by the Bar Date Order.

**1.62 "General Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Miscellaneous Secured Claim, Priority Non-Tax Claim, Medpace Claim, Subordinated 510(b) Claim or Subordinated 510(c) Claim.

**1.63 "Governmental Unit"** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.64 "Holder"** means an Entity holding a Claim, Interest or Liquidating Trust Interest.

**1.65 "Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.66 "Impaired Class"** means a Class of Claims or Interests that is Impaired.

**1.67 "Indemnified Persons"** means the Liquidating Trustee and its current equity holders, including shareholders, partnership interest holders and limited liability company unit holders, Affiliates, partners, subsidiaries, members, officers, directors, managers serving on a board of managers, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, together with their respective predecessors, successors and assigns (in each case, solely in their capacity as such).

**1.68 "Interests"** means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in the Debtor, including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated stock or a similar security.

**1.69 "IRS"** means the Internal Revenue Service.

**1.70 "Lien"** has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

**1.71 "Liquidating Trust"** means the trust described in Article V.C of the Plan to be established under Delaware trust law that, among other things, shall make Distributions pursuant to the terms of the Plan and Liquidating Trust Agreement. With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trustee or any other person or entity authorized to take such action in accordance with the Liquidating Trust Agreement.

**1.72 "Liquidating Trust Agreement"** means the agreement, substantially in the form attached hereto as Exhibit C, establishing the Liquidating Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Debtor, on behalf of the beneficiaries, and the Liquidating Trustee on the Effective Date pursuant to the

terms of the Plan, which shall be in form and substance reasonably acceptable to the Debtor and Medpace.

**1.73 "Liquidating Trust Assets"** means the Effective Date Free Cash transferred to the Liquidating Trust pursuant to Article V.C.2 of the Plan and any additional Cash transferred to the Liquidating Trust pursuant to Article V.E.2 of the Plan.

**1.74 "Liquidating Trust Budget Amount"** means Cash in the amount of $231,275, which is the estimated cost of administering the Liquidating Trust.

**1.75 "Liquidating Trust Funding Amount"** means the sum of the Liquidating Trust Budget Amount and the Class 3 Payment Amount.

**1.76 "Liquidating Trust Interests"** means the uncertificated beneficial interests in the Liquidating Trust representing the right of Holders of Allowed General Unsecured Claims to receive Distributions from the Liquidating Trust in accordance with Article V.C.5 of the Plan and the Liquidating Trust Agreement.

**1.77 "Liquidating Trust Proceeds"** means the Cash proceeds generated by the Liquidating Trust after the Effective Date of the Plan.

**1.78 "Liquidating Trustee"** means the Person or Entity appointed by the Debtor in accordance with Article V.C.6 hereof to administer the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement.

**1.79 "Local Rules"** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.80 "Medpace"** means Medpace, Inc.

**1.81 "Medpace Administrative Claim"** has the meaning ascribed to such term in Article IX.D of the Plan.

**1.82 "Medpace Claim"** means the Claim asserted by Medpace against the Debtor for purported defaults under that certain Amended and Restated Master Services Agreement, dated as of March 25, 2014, in the amount of $4,312,698.51, which Claim is deemed Allowed pursuant to Article II.D.2 of the Plan.

**1.83 "Medpace Released Parties"** means Medpace and its affiliates, subsidiaries, partners (including general partners and limited partners), investors, managing members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, other professionals, advisors, and representatives, and each and all of their respective heirs, successors, and legal representatives, each in their capacities as such.

**1.84 "Miscellaneous Secured Claim"** means a Claim (a) that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (b) that is subject to setoff under section 553 of the Bankruptcy Code and such right of setoff has been asserted by the holder of such right prior

to the Confirmation Date in a properly Filed motion for relief from the automatic stay, to the extent of the value of the Claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.85 "NephroGenex"** means NephroGenex, Inc., a Delaware corporation.

**1.86 "New Common Stock"** means the [___] shares of common stock of Reorganized NephroGenex, $[___] par value, authorized under Article V.A.4 of the Plan and the Reorganized NephroGenex Certificate of Incorporation as of the Effective Date.

**1.87 "Objection(s)"** means any objection, application, motion, complaint or other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

**1.88 "Official Bankruptcy Forms"** means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised or supplemented from time to time.

**1.89 "Ordinary Course Professionals"** means those professionals authorized to be retained and compensated by the Debtor pursuant to the Order Under Sections 105(a), 327, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1 Authorizing the Employment and Payment of Professionals Used in the Ordinary Course of Business [Docket No. 55].

**1.90 "Periodic Distribution Date"** means the date selected by the Liquidating Trustee for making a Distribution to Holders of Allowed Claims in accordance with Article IV of the Liquidating Trust Agreement.

**1.91 "Permissible Investments"** means (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (d) such other investments as the Court may approve from time to time.

**1.92 "Person"** has the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.93 "Petition Date"** means April 30, 2016, the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case.

**1.94 "Plan"** means this chapter 11 plan of reorganization proposed by the Plan Proponent, including all exhibits and schedules attached hereto or otherwise incorporated herein, as such Plan may be altered, amended, modified or supplemented from time to time, including in

accordance with its terms, the Bankruptcy Code and the Bankruptcy Rules, which shall be in form and substance reasonably acceptable to the Debtor and Medpace.

**1.95 "Plan Filing Date"** means February 17, 2017, the date of the initial filing in the Chapter 11 Case of the Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor.

**1.96 "Plan Proponent"** means the Debtor.

**1.97 "Plan Supplement"** means the compilation(s) of documents and forms of documents, including any exhibits and schedules to the Plan not included herewith, that the Debtor shall File with the Court on or before the Plan Supplement Filing Date, which shall be in form and substance reasonably acceptable to the Debtor and Medpace.

**1.98 "Plan Supplement Filing Date"** means the date on which the Plan Supplement shall be Filed with the Court, which date shall be at least five (5) Business Days prior to the Voting Deadline or such other date as may be approved by the Court without further notice to parties in interest.

**1.99 "Priority Claims"** means, collectively, Priority Non-Tax Claims and Priority Tax Claims.

**1.100 "Priority Non-Tax Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.101 "Priority Tax Claim"** means any Claim accorded priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

**1.102 "Professional"** means any professional employed by the Debtor in the Chapter 11 Case pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code and any professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code, other than Ordinary Course Professionals.

**1.103 "Professional Fee Bar Date"** means the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the Effective Date, as set forth in Article IX.A.1 of the Plan.

**1.104 "Professional Fee Claim"** means a Claim of a Professional pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code for compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.105 "Professional Fee Estimate"** means (i) with respect to any Professional, a good-faith estimate of such Professional's anticipated accrued unpaid Professional Fee Claims as of the Effective Date to be provided by each Professional in writing to the Debtor prior to the commencement of the Confirmation Hearing, or in the absence of such a writing, to be prepared

by the Debtor, and (ii) collectively, the sum of all individual Professional Fee Estimates. The Debtor estimates that the Professional Fee Estimate will be approximately $500,000.

**1.106 "Professional Fee Order"** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals [Docket No. 52].

**1.107 "Professional Fee Reserve"** means the reserve of Cash funded by the Debtor and maintained by the Liquidating Trust for the benefit of Holders of Allowed Professional Fee Claims in an amount equal to the Professional Fee Estimate.

**1.108 "Proof of Claim"** means the proof of claim that must be Filed before the applicable Bar Date, which term shall include a request for payment of an administrative expense claim.

**1.109 "Pro Rata"** means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, unless the Plan provides otherwise.

**1.110 "Rejection Bar Date"** means the deadline by which a counterparty to a rejected Executory Contract or an Unexpired Lease of the Debtor must File a Proof of Claim for damages resulting from the rejection of such Executory Contract or Unexpired Lease by the Debtor, which deadline shall be the later of: (a) the General Bar Date; (b) thirty (30) days after the entry of an order by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order authorizing such rejection.

**1.111 "Reorganized Debtor"** means Reorganized NephroGenex.

**1.112 "Reorganized NephroGenex"** means NephroGenex, on and after the Effective Date.

**1.113 "Reorganized NephroGenex Bylaws"** means Reorganized NephroGenex's bylaws substantially in the form attached hereto as Exhibit B, which shall be acceptable in form and substance to Medpace.

**1.114 "Reorganized NephroGenex Certificate of Incorporation"** means Reorganized NephroGenex's certificate of incorporation substantially in the form attached hereto as Exhibit A, which shall be acceptable in form and substance to Medpace.

**1.115 "Retained Books and Records"** means, collectively, (i) the Debtor's Books and Records in the form of electronic mail correspondence, (ii) the Debtor's Books and Records containing privileged communications and (iii) all minutes of the Debtor's board of directors or any subcommittee thereof, and any presentations made or provided to such bodies.

**1.116 "Scheduled"** means, with respect to any Claim, the status and amount, if any, of that Claim as set forth in the Schedules.

**1.117 "Schedules"** mean the schedules of assets and liabilities, schedules of executory contracts and statement of financial affairs Filed by the Debtor pursuant to section 521 of the

Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms, as such schedules and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009 or any orders of the Court.

**1.118 "Solicitation Procedures Order"** means the Order (A) Approving Disclosure Statement; (B) Scheduling Hearing on Confirmation of Plan; (C) Establishing Deadlines and Procedures for (I) Filing Objections to Confirmation of Plan, (II) Claim Objections and (III) Temporary Allowance of Claims for Voting Purposes; (D) Determining Treatment of Certain Unliquidated, Contingent or Disputed Claims for Notice, Voting and Distribution Purposes; (E) Setting Record Date; (F) Approving (I) Solicitation Packages and Procedures for Distribution, (II) Form of Notice of Hearing on Confirmation and Related Matters and (III) Forms of Ballots; (G) Establishing Voting Deadline and Procedures for Tabulation of Votes; and (H) Granting Related Relief [Docket No. ___].

**1.119 "Subordinated 510(b) Claim"** means any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code, including pursuant to a Final Order of the Court.

**1.120 "Subordinated 510(c) Claim"** means any Claim that has been subordinated pursuant to section 510(c) of the Bankruptcy Code, including pursuant to a Final Order of the Court, or is for punitive or exemplary damages or for a fine or penalty, to the extent permitted by applicable law.

**1.121 "Substantial Contribution Claim"** means a Claim under subsections 503(b)(3), (b)(4) or (b)(5) of the Bankruptcy Code for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Case.

**1.122 "Unclaimed Distributions"** means any undeliverable or unclaimed Distributions.

**1.123 "Unexpired Lease(s)"** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.124 "Unimpaired"** means, when used in reference to a Claim or a Class, a Claim or a Class that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.125 "U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

**1.126 "Voting Deadline"** means April 28, 2017, at 4:00 p.m. (Pacific Time), the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

## C. Rules of Interpretation

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or schedule as it may have been or may be amended, modified or supplemented, (c) unless otherwise specified, all references in the Plan to

Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### D. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan and (ii) the state of incorporation of the Debtor shall govern corporate governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Introduction

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**B. Unclassified Claims**

**1. Administrative Claims**

**2. Priority Tax Claims**

**C. Unimpaired Classes of Claims**

**1. Class 1: Miscellaneous Secured Claims**

Class 1 consists of all Miscellaneous Secured Claims. Each Holder of an Allowed Miscellaneous Secured Claim shall be placed in a separate subclass, and each subclass shall be treated as a separate Class for Distribution purposes.

**2. Class 2: Priority Non-Tax Claims**

Class 2 consists of all Priority Non-Tax Claims.

**D. Impaired Classes of Claims**

**1. Class 3: General Unsecured Claims**

Class 3 consists of all General Unsecured Claims.

**2. Class 4: Medpace Claim**

Class 4 consists of the Medpace Claim.

**3. Class 5: Subordinated 510(c) Claims**

Class 5 consists of all Subordinated 510(c) Claims.

**4. Class 6: Subordinated 510(b) Claims**

Class 6 consists of all Subordinated 510(b) Claims.

**E. Impaired Class of Interests**

**1. Class 7: Interests**

Class 7 consists of all Interests.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

### A. Unclassified Claims

#### 1. Administrative Claims

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim (other than a Professional) shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing (provided, that, with respect to any agreed treatment by the Debtor or the Liquidating Trustee regarding any claim of Cassel Salpeter & Co., LLC, Medpace provides its agreement in writing to such treatment); provided, however, that Allowed Administrative Claims (other than those asserted by Professionals) with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (x) on or prior to the Effective Date, by the Debtor, and (y) after the Effective Date, by the Liquidating Trustee. Allowed Professional Fee Claims shall be paid from the Professional Fee Reserve pursuant to Article V.E.1 of the Plan.

#### 2. Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, a Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim or (b) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

### B. Unimpaired Claims

#### 1. Class 1: Miscellaneous Secured Claims

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Liquidating Trustee, a Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Miscellaneous Secured Claim, (a) Cash from the Liquidating Trust equal to the value of such Allowed Miscellaneous Secured Claim, (b) a return of the Holder's Collateral securing the Miscellaneous Secured Claim, (c) such treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be rendered Unimpaired or (d) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

Any Holder of a Miscellaneous Secured Claim shall retain its Lien in the Collateral or the proceeds of the Collateral (to the extent that such Collateral is sold free and clear of such Lien) to the same extent and with the same priority as such Lien held as of Petition Date until such time as (A) the Holder of such Miscellaneous Secured Claim (i) has been paid Cash equal to the value of its Allowed Miscellaneous Secured Claim, (ii) has received a return of the Collateral securing the Miscellaneous Secured Claim or (iii) has been afforded such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing; or (B) such purported Lien has been determined by an order of the Court to be invalid or otherwise avoidable.

### 2. Class 2: Priority Non-Tax Claims

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, a Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Non-Tax Claim or (b) such other treatment as to which such Holder and the Liquidating Trustee shall have agreed upon in writing.

## C. Impaired Claims

### 1. Class 3: General Unsecured Claims

On the Distribution Date, each Holder of an Allowed General Unsecured Claim shall receive, on account of such Allowed General Unsecured Claim, its Pro Rata share of the Liquidating Trust Interests.

As set forth in the Liquidating Trust Agreement, Distributions from the Liquidating Trust on account of Liquidating Trust Interests shall be made from the Liquidating Trust Assets and Liquidating Trust Proceeds after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidating Trust, including but not limited to all costs, expenses and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidating Trust) in carrying out their responsibilities under the Liquidating Trust Agreement, or in any manner connected, incidental or related thereto.

### 2. Class 4: Medpace Claim

The Medpace Claim is an Allowed Claim under the Plan. On the Distribution Date, Medpace shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Medpace Claim, one hundred percent (100%) of the New Common Stock issued and outstanding as of the Effective Date.

### 3. Class 5: Subordinated 510(c) Claims

On or after the Effective Date, all Subordinated 510(c) Claims shall be deemed eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims.

### 4. Class 6: Subordinated 510(b) Claims

On or after the Effective Date, all Subordinated 510(b) Claims shall be deemed eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claims.

## D. Interests

### 1. Class 7: Interests

On the Effective Date, all Interests shall be cancelled and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Interests.

## E. Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Debtor, the Reorganized Debtor and/or the Liquidating Trust with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

## F. Allowed Claims

Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Liquidating Trustee may, in its discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be Filed. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date shall receive its Distribution in accordance with the terms and provisions of the Plan and/or the Liquidating Trust Agreement, as applicable.

# ARTICLE IV

# ACCEPTANCE OR REJECTION OF THE PLAN

## A. Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

## B. Presumed Acceptances by Unimpaired Classes

Classes 1 and 2 are Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders shall not be solicited.

## C. Classes Deemed to Reject Plan

Holders of Claims in Classes 5 and 6 and Interest Holders in Class 7 are not entitled to receive or retain any property under the Plan. Under section 1126(g) of the Bankruptcy Code, such Claim and Interest Holders are deemed to reject the Plan, and the votes of such Claimholders and Interest Holders shall not be solicited.

## D. Impaired Class of Claims Entitled to Vote

Because Claims in Classes 3 and 4 are Impaired under the Plan and Holders of such Claims shall receive or retain property under the Plan, Holders of Claims in Classes 3 and 4 are entitled to vote and shall be solicited with respect to the Plan.

## E. Vacant Classes

Any Class or sub-Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by at least one allowed Claim or allowed Interest, as applicable, or at least one Claim or Interest, as applicable, temporarily allowed under Bankruptcy Rule 3018, shall not be included for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## F. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Because Classes 5, 6 and 7 are deemed to reject the Plan, the Debtor shall (i) seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code and/or (ii) modify the Plan in accordance with Article XII.A hereof. The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such exhibits or schedules to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

# ARTICLE V

# MEANS FOR IMPLEMENTATION OF THE PLAN

## A. Corporate Action

### 1. Continued Corporate Existence

The Debtor shall continue to exist after the Effective Date as the Reorganized Debtor in accordance with the applicable law in the jurisdiction in which it is incorporated and pursuant to

its certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate and bylaws are amended on the Effective Date.

**2. Cancellation of Existing Securities and Agreements**

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, any promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Interests, other than a Claim that is being reinstated and rendered Unimpaired, and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such Interests shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtor under the notes, share certificates and other agreements and instruments governing such Claims and Interests shall be discharged. The holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**3. Certificate of Incorporation and Bylaws**

The certificate of incorporation and bylaws of the Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. The Reorganized NephroGenex Certificate of Incorporation and Reorganized NephroGenex Bylaws shall be in substantially the forms attached to the Plan as Exhibit A and Exhibit B, respectively, and shall be acceptable in form and substance to Medpace.

**4. Authorization and Issuance of New Common Stock**

As of the Effective Date, without the requirement of further act or action under applicable non-bankruptcy law, regulation, order or rule, the Reorganized Debtor is authorized to issue shares of New Common Stock to the Holder of the Medpace Claim. On or as soon as practicable after the Effective Date, shares of New Common Stock shall be issued by the Reorganized Debtor pursuant to the Plan, without the requirement of further act or action under applicable non-bankruptcy law, regulation, order or rule.

**5. Directors and Officers of Reorganized Debtor**

On the Effective Date, the term of the current board of directors of NephroGenex shall expire. The initial board of directors of the Reorganized Debtor shall consist of ___ (_) members. The individuals proposed to serve as officers and directors of the Reorganized Debtor shall be designated by Medpace and identified on a schedule attached to the Plan Supplement.

### 6. No Further Action

Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person or Entity, including but not limited to, Holders of Claims or Interests against or in the Debtor, or directors or officers of the Debtor.

## B. Books and Records; Privilege Matters

### 1. Legal Representation of the Debtor After the Effective Date

Upon the Effective Date, the attorney-client relationship between the Debtor and its current counsel, Cole Schotz P.C., shall be deemed terminated. Current counsel for the Debtor shall not be precluded from representing the Liquidating Trust; provided, however, that in no event shall such counsel, in its capacity as counsel to the Liquidating Trust, bring an action against the Reorganized Debtor.

### 2. Transfer of Debtor's Books and Records

On or before the Effective Date, the Debtor shall transfer (i) the Retained Books and Records to the Liquidating Trust, and (ii) all other Books and Records to the Reorganized Debtor. Upon the termination of the Liquidating Trust, the Retained Books and Records shall be transferred to the Reorganized Debtor. The Liquidating Trust shall provide prompt access to non-privileged Retained Books and Records to the Reorganized Debtor upon request. Prior to the transfer of the Retained Books and Records from the Debtor to the Liquidating Trust, the Debtor (at the direction of Medpace) or the Reorganized Debtor, as applicable, will have the ability to make copies of any information it deems necessary for the continuation of the Debtor's business; provided, however, that to the extent any information to be copied is protected by any privilege, the relevant parties shall execute a non-disclosure agreement to ensure such privilege is not waived.

### 3. Transfer of Evidentiary Privileges; Document Requests

Notwithstanding anything to the contrary herein, on the Effective Date, the Liquidating Trustee shall succeed to the evidentiary privileges (including attorney-client, joint-client, joint-defense, common interest and other privileges) formerly held by the Debtor.

Accordingly, to the extent that documents are requested from current counsel to the Debtor by any Person or Entity, after the Effective Date, only the Liquidating Trustee shall have the ability to waive such attorney-client or other privileges. In addition, current counsel to the Debtor shall have no obligation to produce any documents currently in its possession as a result of or arising in any way out of its representation of the Debtor unless (i) the Person or Entity requesting such documents serves its request on the Liquidating Trustee; (ii) the Liquidating Trustee consents in writing to such production and any waiver of the attorney-client or other privilege such production might cause; and (iii) the Liquidating Trustee or the Person or Entity

requesting such production agrees to pay the reasonable costs and expenses incurred by current counsel for the Debtor in connection with such production.

Finally, to the extent that documents are requested from the Liquidating Trust by any Person or Entity, the Liquidating Trustee (on behalf of the Liquidating Trust) shall be entitled to assert all applicable evidentiary privileges, including attorney-client privilege, formerly held by the Debtor, and shall have no obligation to produce any documents currently in its possession unless the Person or Entity requesting such production agrees to pay the reasonable costs and expenses incurred by the Liquidating Trust, including the reasonable fees of counsel, in connection with such production; provided, however, that nothing herein shall impair the Reorganized Debtor's rights to promptly obtain non-privileged Retained Books and Records from the Liquidating Trust upon request.

## C. The Liquidating Trust

### 1. Establishment and Administration of the Liquidating Trust

(a) On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) holding and maintaining the Retained Books and Records; (ii) holding the Liquidating Trust Assets; (iii) resolving all Disputed Claims and any Claim objections pending as of the Effective Date; (iv) prosecuting any objections to Claims that the Liquidating Trustee deems appropriate and resolving such objections; and (v) making Distributions from the Liquidating Trust to Holders of Allowed Claims as provided for in the Plan and/or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee must first receive written agreement from Medpace before resolving claims under (iii) or prosecuting objections under (iv), involving Cassel Salpeter & Co., LLC.

(b) Upon execution of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trust. The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

(c) It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee, in its business judgment, shall make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. All Liquidating Trust Assets held by the Liquidating Trust on the Effective Date shall be deemed for federal income tax purposes to have been distributed by the Debtor on a Pro Rata basis to Holders of Allowed General Unsecured Claims and then contributed by such Holders to the Liquidating Trust in exchange for the Liquidating Trust Interests. All Holders of Allowed General Unsecured Claims have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes. The beneficiaries under the Liquidating Trust shall be treated as the deemed owners of the Liquidating Trust. The Liquidating Trust shall be responsible for

filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

**2. Assets of the Liquidating Trust**

On or before the Effective Date, the Debtor shall transfer and assign to the Liquidating Trust all of its right, title and interest in and to the Effective Date Free Cash, and in accordance with section 1141 of the Bankruptcy Code, such Cash shall automatically vest in the Liquidating Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the Holders of Liquidating Trust Interests as set forth in the Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. Thereupon, neither the Debtor nor the Reorganized Debtor shall have any interest in or with respect to the Effective Date Free Cash.

**3. Other Funds to be Transferred to the Liquidating Trust**

Pursuant to Article V.E.1 of the Plan, on or before the Effective Date, the Debtor shall transfer to the Liquidating Trust Cash in the amount of the Professional Fee Estimate, which Cash shall be used by the Liquidating Trustee to fund the Professional Fee Reserve.

Pursuant to Article V.E.2 of the Plan, on or before the Effective Date, the Debtor shall transfer to the Liquidating Trust Cash in the amount of the Administrative and Priority Claims Estimate, which Cash shall be used by the Liquidating Trustee to fund the Administrative Claims Reserve.

**4. Rights and Powers of the Liquidating Trust and the Liquidating Trustee**

(a) Except as otherwise provided in the Plan and without infringing or duplicating any of the rights and powers of the Reorganized Debtor, the Liquidating Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, and the right to (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (ii) make Distributions contemplated by the Plan and the Liquidating Trust Agreement; (iii) establish and administer any necessary reserves that may be required, including the Disputed Claims Reserve, the Administrative Claims Reserve and the Professional Fee Reserve; (iv) object to Disputed Claims and, without Court approval, settle, compromise, withdraw or resolve in any manner such objections; (v) employ and compensate professionals (including professionals previously retained by the Debtor), provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets and Liquidating Trust Proceeds; and (vi) file all federal, state and local tax returns if necessary; provided, however, that the Liquidating Trustee shall not have the ability to file federal and state income tax returns for the Debtor or Reorganized Debtor for tax year 2017 or any year thereafter. Notwithstanding anything to the contrary, the Liquidating Trust shall neither impair nor duplicate the rights, duties, or powers of the Reorganized Debtor.

(b) The Liquidating Trustee has full authority to take any steps necessary to administer the Liquidating Trust Agreement, including without limitation, the duty and obligation to make Distributions from the Liquidating Trust Assets and the Liquidating Trust Proceeds in accordance with the provisions of the Plan, all in accordance with the Liquidating Trust Agreement.

**5. Liquidating Trust Interests**

(a) On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan, receive its Pro Rata share of the Liquidating Trust Interests. Liquidating Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and issued by the Liquidating Trust to, and held by the Liquidating Trustee in, the Disputed Claims Reserve pending allowance or disallowance of such Claims. No other Entity shall have any interest, legal, beneficial or otherwise, in the Liquidating Trust Assets upon the assignment and transfer of such assets to the Liquidating Trust.

As set forth in the Liquidating Trust Agreement, Distributions from the Liquidating Trust on account of Liquidating Trust Interests shall be made from the Liquidating Trust Assets and Liquidating Trust Proceeds after paying, reserving against or satisfying, among other things, the operating and administrative expenses of the Liquidating Trust, including but not limited to all costs, expenses and obligations incurred by the Liquidating Trustee (or professionals who may be employed by the Liquidating Trustee in administering the Liquidating Trust) in carrying out their responsibilities under the Liquidating Trust Agreement, or in any manner connected, incidental or related thereto.

(b) The Liquidating Trust Interests shall be uncertificated and shall be nontransferable except upon death of the Holder or by operation of law. Holders of Liquidating Trust Interests, in such capacity, shall have no voting rights with respect to such interests. The Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Liquidating Trust to extend such term conditioned upon the Liquidating Trust (i) not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended) and (ii) obtaining the Reorganized Debtor's prior written consent to extend such term (such consent not to be unreasonably withheld).

**6. Appointment of a Liquidating Trustee**

(a) The initial Liquidating Trustee shall be John P Hamill LLC, the sole member of which is John P. Hamill, the Debtor's current Chief Executive Officer and Chief Financial Officer. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and Liquidating Trust Agreement.

(b) The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in its sole discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

(c) The Liquidating Trustee and its professionals shall be exculpated and indemnified pursuant to and in accordance with the terms of the Plan and Liquidating Trust Agreement.

**7. Indemnification of Liquidating Trustee and Certain Other Parties**

The Indemnified Persons shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trust or Liquidating Trustee (as applicable), except those acts that are determined by Final Order of the Court to have arisen out of their own intentional fraud, willful misconduct or gross negligence. Each Indemnified Person shall be entitled to be indemnified, held harmless and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that Person's or Entity's actions or inactions regarding the implementation or administration of the Plan, or the discharge of their duties under the Plan or Liquidating Trust Agreement, except for any actions or inactions that are determined by Final Order of the Court to have arisen from intentional fraud, willful misconduct or gross negligence. Any Claim of the Indemnified Persons to be indemnified, held harmless or reimbursed shall be satisfied solely from the Liquidating Trust Assets, Liquidating Trust Proceeds and any applicable insurance coverage.

**8. Distributions to Holders of Allowed General Unsecured Claims**

(a) Initial Distributions. On the Distribution Date, the Liquidating Trustee shall make, or shall make adequate reserves in the Disputed Claims Reserve for, the Distributions required to be made under the Plan to Holders of Allowed General Unsecured Claims. The Liquidating Trustee shall not make any Distributions of Liquidating Trust Assets to the beneficiaries under the Liquidating Trust unless the Liquidating Trustee retains and reserves in the Disputed Claims Reserve such amounts as are required under Article VI.H.3 of the Plan.

(b) Interim Distributions. The Liquidating Trustee shall make interim Distributions of Cash to Holders of Liquidating Trust Interests in accordance with the Plan and Article IV of the Liquidating Trust Agreement.

(c) Final Distributions. The Liquidating Trust shall terminate and the Liquidating Trustee shall make the final Distributions upon the occurrence of the earlier of (a) the substantial completion of all the Liquidating Trustee's duties, responsibilities and obligations under the Liquidating Trust Agreement, and (b) the fifth (5th) anniversary of the Effective Date; provided, however, that termination of the Liquidating Trust shall only be deemed effective upon the filing by the Liquidating Trustee with the Court of a certification of termination of the Liquidating Trust. Notwithstanding the foregoing, on or prior to a date not less than six (6) months prior to such termination, the term of the Liquidating Trust may be extended for one or more finite terms based upon the particular facts and circumstances present at that time, if an extension is necessary to the liquidating purpose of the Trust and the prior written consent of the Reorganized Debtor is obtained (such consent not to be unreasonably withheld).

Upon termination of the Liquidating Trust, if the Liquidating Trustee reasonably determines that any remaining Liquidating Trust Assets and Liquidating Trust Proceeds are insufficient to render a further distribution practicable, or exceed the amounts required to be paid under the Plan, the Liquidating Trustee shall transfer such remaining funds to a charitable institution selected by the Liquidating Trustee, which charitable institution shall be qualified as a not-for-profit corporation under applicable federal and state laws.

#### 9. Distributions to Holders of Administrative and Priority Claims

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date an Administrative Claim, Priority Tax Claim or Priority Non-Tax Claim becomes an Allowed Claim, the Liquidating Trustee shall make the Distributions required to be made under the Plan to Holders of Allowed Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims, subject to the limitations set forth in Section 5.4 of the Liquidating Trust Agreement.

#### 10. Distributions to Medpace

On the Effective Date, Medpace shall receive the New Common Stock, representing all the equity interests in the Reorganized Debtor.

### D. Vesting of Assets; Release of Liens

As of the Effective Date, the property of the Debtor's Estate (including, for the avoidance of doubt, all of the Debtor's intellectual property), together with any property of the Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor may operate it business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Court. As of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan or the Confirmation Order. Without limiting the generality of the foregoing, the Reorganized Debtor may, without application to or approval by the Court, pay fees that it incurs after the Effective Date for reasonable professional fees and expenses.

### E. Accounts and Reserves

#### 1. Professional Fee Reserve

On or before the Effective Date, the Debtor shall transfer to the Liquidating Trust Cash in the Amount of the Professional Fee Estimate, which Cash shall be used by the Liquidating Trustee to fund the Professional Fee Reserve. The Cash so transferred shall not be used for any purpose other than to pay Allowed Professional Fee Claims. The Liquidating Trustee (i) shall segregate and shall not commingle the Cash held in the Professional Fee Reserve and (ii) subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall pay each Professional Fee Claim of a Professional employed by the Debtor, on or as soon as reasonably practicable after entry of a Final Order allowing such Claim. After all Professional Fee Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid by the Liquidating Trust, any remaining Cash in the Professional Fee Reserve shall be transferred to and become

part of the Administrative Claims Reserve. The Reorganized Debtor and Medpace have standing to object for any reason or cause to Final Fee Applications and any other request by a Professional for the payment of fees and expenses in the Chapter 11 Case. In the event that the Reorganized Debtor or Medpace asserts an objection to a Professional's request for the payment of fees or expenses, counsel to the Debtor shall not represent such Professional in connection with resolution of such objection.

The Professionals employed by the Debtor shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing and prosecution of Final Fee Applications, from the Professional Fee Reserve. Any time or expenses incurred in the preparation, filing and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Court. For the avoidance of doubt, the Reorganized Debtor and the Liquidating Trustee will not be subject to liability for fees and expenses incurred for litigation over Professional Fee Claims.

**2. Administrative Claims Reserve**

On or before the Effective Date, the Debtor shall transfer to the Liquidating Trust Cash in the Amount of the Administrative and Priority Claims Estimate, which Cash shall be used by the Liquidating Trustee to fund the Administrative Claims Reserve. The Cash so transferred shall not be used for any purpose other than to pay Allowed Administrative Claims (except Professional Fee Claims, which shall be paid from the Professional Fee Reserve) and Allowed Priority Claims. The Liquidating Trustee (i) shall segregate and shall not commingle the Cash held in the Administrative Claims Reserve and (ii) subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall pay each Administrative Claim (except Professional Fee Claims, which shall be paid from the Professional Fee Reserve) and Priority Claim on or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim. After all Administrative Claims (except Professional Fee Claims) and Priority Claims are Allowed or Disallowed and the Allowed amounts of such Claims are paid by the Liquidating Trust, any remaining Cash in the Administrative Claims Reserve shall be used as follows: (i) first, to the extent that the amount of Effective Date Free Cash was less than the Liquidating Trust Funding Amount, Cash in the Administrative Claims Reserve shall be transferred to the Liquidating Trust until the Liquidating Trust has received the full Liquidating Trust Funding Amount; and (ii) second, after the Liquidating Trust has been fully funded (*i.e.*, the Liquidating Trust has received funding in the full amount of the Liquidating Trust Funding Amount), any remaining Cash in the Administrative Claims Reserve shall be transferred to and become property of the Reorganized Debtor.

**3. Other Reserves**

The Liquidating Trust shall establish and administer any other necessary reserves that may be required under the Plan or Liquidating Trust Agreement, including the Disputed Claims Reserve.

## F. Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents without the payment of any such tax or governmental assessment.

## G. Applicability of Section 1145 of the Bankruptcy Code

Under section 1145 of the Bankruptcy Code, the issuance of the Liquidating Trust Interests shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

Further, the issuance of the New Common Stock to Medpace under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state securities laws requiring registration of securities. Medpace shall be deemed a Bankruptcy Code section 1145 underwriter such that the New Common Stock issued to it shall be subject to applicable restrictions on transfer, and the certificate evidencing the New Common Stock shall be applicably legended to reflect such restrictions.

If either the Liquidating Trustee or Medpace determine, with the advice of respective counsel, that compliance is required with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee and/or Medpace, as the case may be, shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

## H. Preservation of Causes of Action

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions or categories of actions specifically identified on a schedule attached to the Plan Supplement, and such Causes of Action shall vest in the Reorganized Debtor as of the Effective Date. The Reorganized Debtor, in its sole and absolute discretion, shall determine whether to bring, settle, release, compromise or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Reorganized Debtor or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtor or any successor holding such rights of action. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Causes of Action against them as any indication that the Reorganized Debtor will not pursue any and all available Causes of Action against them. The Reorganized Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan. For the avoidance of doubt, the

Reorganized Debtor shall not bring, and hereby waives and releases, any and all rights, claims or Causes of Action against the Debtor's current or former directors and officers that the Reorganized Debtor otherwise might be entitled to assert. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or an order of the Bankruptcy Court, the Reorganized Debtor expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of the Plan; provided, however, solely with respect to Avoidance Actions, only those Avoidance Actions specifically identified on a schedule attached to the Plan Supplement shall vest in the Reorganized Debtor, and all other Avoidance Actions shall be waived.

### I. Effectuating Documents; Further Transactions

The Debtor's Chief Executive Officer and Chief Financial Officer and the officers and directors of the Reorganized Debtor, if applicable, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor's Chief Executive Officer and Chief Financial Officer shall be authorized to certify or attest to any of the foregoing actions.

### J. Certain Obligations of Reorganized Debtor

The Reorganized Debtor shall (i) file federal and state income tax returns for the Debtor for tax year 2017; (ii) issue Form W-2 statements to the Debtor's employees for calendar year 2017; and (iii) issue Form 1099 statements to the Debtor's consultants for calendar year 2017.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions on Allowed Claims

Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date or become Allowed Claims thereafter shall be made by the Disbursing Agent pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreement. Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim.

### B. Disbursing Agent

The Disbursing Agent shall make all Distributions required under the Plan, subject to the terms and provisions of the Plan and the Liquidating Trust Agreement. If the Disbursing Agent is an independent third party designated to serve in such capacity, such Disbursing Agent shall

receive, without further Court approval, reasonable compensation from the Liquidating Trust for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties. The Disbursing Agent shall be authorized and directed to rely upon the Debtor's books and records and the Liquidating Trust's representatives and professionals in determining Allowed Claims entitled to Distributions under the Plan in accordance with the terms and conditions of the Plan.

## C. Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1. Delivery of Distributions in General

Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the Proofs of Claim Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is Filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, after sufficient evidence of such addresses as may be requested by the Disbursing Agent is provided, (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtor or the Disbursing Agent at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

In making Distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the Claims register maintained by the Claims Agent in the Chapter 11 Case, as modified by any Final Order of the Court disallowing Claims in whole or in part.

### 2. Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address and such Holder provides sufficient evidence of such address as may be requested by the Disbursing Agent, at which time all missed Distributions shall be made to such Holder without interest, subject to the time limitations set forth below. Amounts in respect of undeliverable Distributions made by the Disbursing Agent shall be returned to the Disbursing Agent until such Distributions are claimed. The Disbursing Agent shall segregate and, with respect to Cash, deposit in a segregated account designated as an unclaimed Distribution reserve undeliverable and unclaimed Distributions for the benefit of all such similarly-situated Persons or Entities until such time as a Distribution becomes deliverable or is claimed, subject to the time limitations set forth below.

Any Holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed Distribution within three (3) months after the date such Distribution was returned undeliverable shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim

for an undeliverable or unclaimed Distribution against the Debtor or its Estate, the Reorganized Debtor, the Liquidating Trustee, the Liquidating Trust, or their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its or their property. In the case of undeliverable or unclaimed Distributions on account of Administrative Claims, Priority Tax Claims or Priority Non-Tax Claims, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall revert to the Administrative Claims Reserve. In the case of undeliverable or unclaimed Distributions on account of Liquidating Trust Interests, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall revert to the Liquidating Trust, and all title to and all beneficial interests in the Liquidating Trust Assets represented by any such undeliverable Distributions shall revert to and/or remain in the Liquidating Trust and shall be distributed in accordance with Article IV of the Liquidating Trust Agreement and the Plan. The reversion of such Cash to the Administrative Claims Reserve or the Liquidating Trust, as applicable, shall be free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be treated in accordance with the terms of the Plan and the Liquidating Trust Agreement. Nothing contained in the Plan or the Liquidating Trust Agreement shall require the Debtor, the Reorganized Debtor, the Liquidating Trust, the Liquidating Trustee or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

### D. Means of Cash Payment

Cash payments made pursuant to the Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of the Disbursing Agent by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Disbursing Agent. In the case of foreign creditors, Cash payments may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

### E. Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

### F. Withholding and Reporting Requirements

In accordance with section 346 of the Bankruptcy Code and in connection with the Plan and all Distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority. The Disbursing Agent shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All Distributions hereunder shall be subject to withholding and reporting requirements. As a condition of making any Distribution under the Plan, each Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-9 statements, to effect the necessary information reporting and withholding of applicable taxes with respect to

Distributions to be made under the Plan as the Disbursing Agent may request. The Disbursing Agent shall be entitled in its sole discretion to withhold any Distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Disbursing Agent to such Holder of an Allowed Claim, which timeframe shall not be less than thirty (30) days. The Distribution to any Holder of an Allowed Claim that fails to timely respond to the Disbursing Agent shall be treated as an undeliverable or unclaimed Distribution pursuant to Article VI.C.2 of the Plan.

Notwithstanding any other provision of the Plan, each Person and Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

## G. Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims

### 1. Objection Deadline; Prosecution of Objections

Except as set forth in the Plan with respect to Professional Fee Claims and Administrative Claims, all objections to Claims must be Filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Court. If an objection has not been Filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Court, the Claim to which the Proof of Claim or Scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been Allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be given only to those Persons or Entities that have requested notice in the Chapter 11 Case in accordance with Bankruptcy Rule 2002.

On and after the Effective Date, the Liquidating Trust shall have the authority to: (1) File, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Court; provided, however, that the objection to and settlement of Professional Fee Claims shall not be subject to this Article VI.G, but rather shall be governed by Article IX.A of the Plan. In the event that any objection Filed by the Debtor remains pending as of the Effective Date, the Liquidating Trustee shall be deemed substituted for the Debtor as the objecting party. Nothing in the Plan shall affect the right of the U.S. Trustee, the Reorganized Debtor or Medpace to object to claims for any reason or cause (including Administrative Claims and Professional Fee Claims), and such right is fully reserved.

The Liquidating Trust shall be entitled to assert all of the Debtor's rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization and/or equitable subordination and counter-claims with respect to Claims; provided, however, that the rights of the Reorganized Debtor to bring, settle, release, compromise or enforce Causes of Action are not impaired.

### 2. No Distributions Pending Allowance

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### 3. Disputed Claims Reserve

On the Distribution Date and on each subsequent Periodic Distribution Date, the Liquidating Trust shall withhold on a Pro Rata basis from property that would otherwise be distributed to Holders of General Unsecured Claims entitled to Distributions under the Plan on such date, in a separate Disputed Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions to which Holders of such Disputed General Unsecured Claims would be entitled under the Plan if such Disputed Claims were allowed in their Disputed Claim Amount. The Liquidating Trust may request, if necessary, estimation for any Disputed General Unsecured Claim that is contingent or unliquidated, or for which the Liquidating Trust determines to reserve less than the Face Amount. If the Liquidating Trust elects not to request such an estimation from the Court with respect to a Disputed General Unsecured Claim that is contingent or unliquidated, the Liquidating Trust shall withhold the applicable Disputed Claims Reserve based upon the good faith estimate of the amount of such General Unsecured Claim by the Liquidating Trust. If practicable, the Liquidating Trust shall invest any Cash that is withheld as the Disputed Claims Reserve in an appropriate manner to ensure the safety of the investment, in accordance with Section 3.5 of the Liquidating Trust Agreement. Nothing in the Plan, the Disclosure Statement or the Liquidating Trust Agreement shall be deemed to entitle the Holder of a Disputed General Unsecured Claim to postpetition interest on such Claim, however.

### 4. Distributions After Allowance

Payments and Distributions to Holders of Disputed Claims that ultimately become Allowed Claims shall be made in accordance with provisions of the Liquidating Trust Agreement that govern Distributions to Holders of Allowed General Unsecured Claims (Article IV of the Liquidating Trust Agreement) and Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims (Article V of the Liquidating Trust Agreement).

### 5. De Minimis Distributions

The Liquidating Trust shall not be required to make any Distributions to Holders of Allowed Claims aggregating less than twenty-five dollars ($25.00). Cash that otherwise would be payable under the Plan to Holders of Liquidating Trust Interests but for this Article VI.G.5 shall remain Liquidating Trust Assets to be used in accordance with the Liquidating Trust Agreement. Cash that otherwise would be payable under the Plan to Holders of Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims but for this Article VI.G.5 shall remain in the Administrative Claims Reserve.

### 6. Fractional Dollars

Any other provision of the Plan notwithstanding, the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### 7. Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### 8. Distribution Record Date

The Disbursing Agent shall have no obligation to recognize the transfer or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date. Instead, the Disbursing Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record Holders stated on the official Claims register or the Debtor's Books and Records, as applicable, as of the close of business on the Distribution Record Date.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejected Contracts and Leases

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed automatically rejected by the Debtor as of the Effective Date, unless such contract or lease (i) previously has been assumed or rejected by the Debtor, (ii) expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date or (iv) is identified on a schedule to the Plan Supplement as a contract to be assumed (which schedule shall be designated by Medpace); provided, however, that nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or its successors and assigns has any liability thereunder; and, provided further, that the Debtor reserves its right, at any time before the Confirmation Date, to assume any Executory Contract or Unexpired Lease that was not already rejected prior to the Confirmation Date. The Confirmation Order shall constitute an order of the Court approving the rejections described in this Article VII.A, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

## B. Rejection Damages Bar Date

If the rejection of an Executory Contract or Unexpired Lease pursuant to Article VII.A gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate, the Reorganized Debtor, the Liquidating Trust or their respective successors or properties unless a Proof of Claim is Filed with the Claims Agent and served on counsel for the Liquidating Trust and counsel for the Reorganized Debtor within thirty (30) days after service of notice of entry of the Confirmation Order.

## C. Indemnification Obligations

Subject to the last sentence of this Article VII.C, any obligations of the Debtor pursuant to its organizational documents, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse or limit the liability of any Person pursuant to the Debtor's organizational documents, policy of providing employee indemnification, applicable state law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Persons based upon any act or omission related to such Persons' service with, for or on behalf of the Debtor prior to the Effective Date with respect to all present and future actions, suits and proceedings relating to the Debtor shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, however, that all obligations under this Article VII.C shall be limited solely to available insurance coverage and neither the Reorganized Debtor, the Liquidating Trust, the Liquidating Trustee nor any of their assets shall be liable for any such obligations. Any Claim based on the Debtor's obligations set forth in this Article VII.C shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code. This provision for indemnification, reimbursement and limitation of liability shall not apply to or cover any Claims, suits or actions against a Person that result in a Final Order determining that such covered Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

## D. Confidentiality Obligations Owed to Debtor

Any confidentiality agreement entered into between the Debtor and any other party requiring such party to maintain the confidentiality of the Debtor's proprietary information shall be deemed to be, and will be treated as though it is, an Executory Contract that is assumed pursuant to section 365 of the Bankruptcy Code under the Plan, so long as the Reorganized Debtor shall not have to pay any cure amounts or have any other obligations to effect the assumption thereto.

## E. Treatment of Insurance Policies

The Debtor will assume under the Plan any and all insurance policies maintained by the Debtor that have not expired or terminated pursuant to their own terms on or before the Effective Date, including but not limited to policies issued by ACE American Insurance Company, AIG,

Allied World, American Casualty Co. of Reading PA (CNA), Berkley Insurance Company, Chubb Insurance Company, Endurance, Federal Insurance Company, Illinois Union Insurance Company, National Union Fire Insurance Company of Pittsburgh, RSUI, Starr Indemnity & Liability, XL Specialty Insurance Company or their respective affiliates providing directors and officers insurance coverage, products liability insurance coverage, fiduciary liability insurance coverage, employment practices liability insurance coverage and other customary insurance coverages. For the avoidance of doubt, the Reorganized Debtor shall not have to pay any cure amounts or have any other obligations to effect the assumption thereto.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. Conditions to Confirmation

The following are conditions precedent to confirmation of the Plan, each of which must be satisfied or waived in accordance with Article VIII.C of the Plan:

1. the Confirmation Order is in form and substance reasonably acceptable to the Debtor and Medpace and shall, among other things:

(a) provide that the Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created under or in connection with the Plan; and

(b) provide that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan; and

2. the Confirmation Order shall have been entered by the Court.

### B. Conditions to Occurrence of the Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article VIII.C of the Plan:

1. the Confirmation Order shall not then be stayed, vacated or reversed and shall not have been amended without the agreement of the Debtor and Medpace;

2. the Confirmation Order shall not then be subject to a pending appeal, and the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending;

3. the Liquidating Trust shall have been established and the Effective Date Free Cash shall have been transferred to and vested in the Liquidating Trust free and clear of all Claims and Liens, except as specifically provided in the Plan and the Liquidating Trust Agreement;

4. the Professional Fee Reserve and the Administrative Claims Reserve shall have been funded in Cash in full;

5. the Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable;

6. all actions, documents and agreements (including, but not limited to, the Plan, Disclosure Statement, Plan Supplement and Liquidating Trust Agreement) necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the Debtor and Medpace, and such actions, documents and agreements shall have been effected or executed and delivered. The Liquidating Trust Agreement shall be completed and in final form and, as applicable, executed by the parties thereto and all conditions precedent contained in any of the foregoing shall have been satisfied or waived; and

7. the New Common Stock, representing all the Reorganized Debtor's equity interests, shall have been issued to Medpace.

## C. Waiver of Conditions

Each of the conditions to Confirmation and the Effective Date set forth in Articles VIII.A and VIII.B of the Plan, respectively, may be waived in whole or in part by the Debtor without any other notice to parties in interest or the Court, provided that the Debtor has received the prior written consent of Medpace, which consent shall not unreasonably be withheld. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of any party to exercise any of its foregoing rights shall not be deemed a waiver of any of its other rights, and each such right shall be deemed an ongoing right that may be asserted thereby at any time.

## D. Consequences of Non-Occurrence of Effective Date

If the Effective Date does not occur within ninety (90) days following the Confirmation Date, or by such later date after notice and hearing, as is proposed by the Debtor, then upon motion by the Debtor and upon notice to such parties in interest as the Court may direct, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims shall be null and void without further order of the Court; and (c) the time within which the Debtor may assume and assign or reject all Executory Contracts shall be extended for a period of thirty (30) days after such motion is granted.

# ARTICLE IX

# ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

## A. Professional Fee Claims

### 1. Final Fee Applications

All final requests for payment of Professional Fee Claims (the "Final Fee Applications") must be Filed no later than thirty (30) days after the Effective Date, and served upon the Office of the U.S. Trustee, counsel to the Liquidating Trustee, counsel to the Reorganized Debtor, counsel to the Debtor and counsel to Medpace (collectively, the "Fee Application Objection Parties"). Objections, if any, to Final Fee Applications of such Professionals must be Filed and served on the requesting Professional and the Fee Application Objection Parties no later than twenty (20) days from the date on which each such Final Fee Application is served and Filed. For the avoidance of doubt, each of the U.S. Trustee, the Liquidating Trust, the Reorganized Debtor and Medpace shall have standing to object to Final Fee Applications, and to any other request by a Professional for the payment of fees and expenses in the Chapter 11 Case for any cause or reason. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Court.

### 2. Employment of Professionals after the Effective Date

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or any order previously entered by the Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate.

## B. Substantial Contribution Compensation and Expenses Bar Date

Any Person or Entity that wishes to make a Substantial Contribution Claim based on facts or circumstances arising after the Petition Date must File an application with the Clerk of the Court, on or before the Administrative Claims Bar Date, and serve such application on the Fee Application Objection Parties and as otherwise required by the Court and the Bankruptcy Code, or be forever barred from seeking such compensation or expense reimbursement. Objections, if any, to the Substantial Contribution Claim must be Filed no later than the Administrative Claims Objection Deadline, unless otherwise extended by Order of the Court.

## C. Other Administrative Claims

All other requests for payment of an Administrative Claim arising after the Petition Date, other than Professional Fee Claims, must be Filed with the Court and served on the Fee Application Objection Parties no later than the Administrative Claims Bar Date. Unless the Liquidating Trust, the Reorganized Debtor, Medpace or any other party in interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Liquidating Trust,

Medpace or any other party in interest objects to an Administrative Claim, the Court shall determine the Allowed amount of such Administrative Claim.

**D. Medpace Administrative Claim**

Medpace shall have an Allowed Administrative Claim (the "Medpace Administrative Claim") in the amount of $83,444, which amount already has been paid to Medpace pursuant to the Consulting Agreement, by and between the Debtor and Medpace, dated as of May 1, 2016, which agreement was approved by Court order dated May 27, 2016 [Docket No. 62]. Medpace shall not be required to file a Proof of Claim or other pleading to evidence the Medpace Administrative Claim.

## ARTICLE X

## EFFECTS OF CONFIRMATION

**A. Compromise and Settlement of Claims and Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan or relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest, or any Distribution to be made on account of such Claim or Interest. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and reasonable.

**B. Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, the Liquidating Trust and the Reorganized Debtor and all other parties in interest in the Chapter 11 Case.

**C. Discharge of the Debtor**

Except as provided in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for, and in complete satisfaction, discharge and release of all Claims and termination of all Interests, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of or in exchange for such Claims and Interests. Except as provided in the Plan or the Confirmation Order, Confirmation shall (a) discharge the Debtor from all Claims and other debts that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is

allowed pursuant to section 502 of the Bankruptcy Code or (iii) the Holder of a Claim based on such debt has accepted the Plan; and (b) terminate all Interests and any other rights of equity security holders in the Debtor.

As of the Confirmation date, except as provided in the Plan or the Confirmation Order, all Persons and Entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, the Liquidating Trust, the Liquidating Trustee, their successors or their property, any other or further claims, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtor and termination of Interests in the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest. Notwithstanding anything to the contrary in the Plan, no party may assert any Claims against the Reorganized Debtor.

## D. Releases and Exculpation

### 1. Releases by the Debtor

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive and discharge all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever (other than for fraud, willful misconduct or gross negligence) in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of the Debtor, the Reorganized Debtor and the Liquidating Trust to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, against (a) the Debtor, its Professionals and Court-retained agents and the Debtor's directors, officers and employees employed by or serving the Debtor as of the Plan Filing Date, and (b) any of the successors or assigns of any of the parties identified in the foregoing clause (a); provided, however, that nothing in this Article X.D.1 shall be a waiver of any defense, offset or objection to any Claim Filed against the Debtor and its Estate by any Person or Entity; provided, further, that nothing herein shall prevent any party from objecting to a Professional Fee Claim for any cause or reason.*

### 2. Mutual Releases by Debtor and Medpace

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive and discharge all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights*

*to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, against the Medpace Released Parties and any of their successors or assigns; provided, however, that nothing in this paragraph shall be a waiver of any defense, offset or objection to any Claim Filed against the Debtor and its Estate by any Person or Entity.*

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, Medpace shall be deemed to forever release, waive and discharge all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of Medpace to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, against (a) the Debtor, its Professionals and Court-retained agents, (b) the Debtor's current and former directors, officers and employees, and (c) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (b).*

### 3. Exculpation and Limitation of Liability

*Except as otherwise specifically provided in the Plan, none of (a) the Debtor, (b) the directors, officers and employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the Professionals or Court-retained agents of the Debtor, (d) the Medpace Released Parties, or (e) or any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (d), shall have or incur, and each is hereby released and exculpated from, any liability, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively in law or equity to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence or willful misconduct, and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. For the avoidance of*

*doubt, this exculpation only applies to any acts or omissions of the exculpated parties that occurred on and after the filing of the Chapter 11 Case.*

*Notwithstanding any other provision of the Plan, no Holder of a Claim or an Interest, no other party in interest, none of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, and none of their respective successors or assigns, shall have any right of action against (a) the Debtor, (b) the directors, officers and employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the Professionals or Court-retained agents of the Debtor, (d) the Medpace Released Parties or (e) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (d), for any act or omission in connection with, relating to or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence or willful misconduct. For the avoidance of doubt, this paragraph only applies to any acts or omissions of such protected parties that occurred on and after the filing of the Chapter 11 Case.*

## E. Injunction

*Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all Persons and Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, the Liquidating Trust or their property on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) acting or proceeding, in any manner or in any place, that does not conform to or comply with the provisions of the Plan.*

*As of the Effective Date, all Persons and Entities that have held, currently hold or may hold a claim, demand, debt, right, cause of action or liability that is released pursuant to Articles X.D.1 and X.D.2 of the Plan are permanently enjoined from taking any of the following actions on account of any such released claims, demands, debts, rights, causes of action or liabilities: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to a released party; and (v) acting or proceeding, in any manner or in any place, that does not conform to or comply with the provisions of the Plan.*

*As of the Confirmation Date, all Persons and Entities are permanently enjoined from seeking or obtaining (i) any documents or other materials from current counsel for the Debtor that are in the possession of such counsel as a result of or arising in any way out of its*

*representation of the Debtor, or (ii) Retained Books and Records from the Liquidating Trust, except in accordance with Article V.B of the Plan.*

# ARTICLE XI

# RETENTION OF JURISDICTION

## A. Retention of Jurisdiction by the Court

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order, substantial Consummation of the Plan and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case, the Plan, the Liquidating Trust Agreement and the Liquidating Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. To the extent not otherwise determined by the Plan, to determine the allowance, classification or priority of Claims upon objection by any party in interest entitled to File an objection;

2. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person or Entity, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and Consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity;

3. To determine any and all applications for allowance of Professional Fee Claims;

4. To determine any Priority Tax Claims, Priority Non-Tax Claims or Administrative Claims entitled to priority under section 507(a) of the Bankruptcy Code;

5. To resolve any dispute arising under or related to the implementation, execution, Consummation or interpretation of the Plan and the making of Distributions hereunder;

6. To determine any and all motions related to the rejection, assumption or assignment of Executory Contracts or Unexpired Leases or determine any issues arising from the deemed rejection of Executory Contracts and Unexpired Leases set forth in Article VII of the Plan;

7. To hear and determine or resolve any and all matters related to Causes of Action;

8. To hear and determine or resolve all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

9. Except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands;

10. To enter a Final Order closing the Chapter 11 Case;

11. To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purposes;

12. To issue such orders in aid of Consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

13. To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

14. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

15. To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the applicable Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

16. To resolve any dispute or matter arising under or in connection with any order of the Court entered in the Chapter 11 Case;

17. To resolve any disputes concerning any release, injunction, exculpation or other waiver or protection provided in the Plan;

18. To approve, if necessary, any Distributions, or objections thereto, under the Plan;

19. To approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidating Trust;

20. To resolve any dispute or matter arising under or in connection with the Liquidating Trust;

21. To resolve any dispute or matter relating to the Liquidating Trust's retention of Retained Books and Records, including the Liquidating Trust's assertion of applicable privileges with respect to the production of Retained Books and Records;

22. To order the production of documents, disclosures or information, or the appearance for deposition demanded pursuant to Bankruptcy Rule 2004; and

23. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

### B. Failure of Court to Exercise Jurisdiction

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Article XI.A of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### A. Modifications and Amendments

The Debtor may alter, amend or modify the Plan or any Exhibits or schedules thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date provided that the Debtor has received the prior written consent of Medpace, which consent shall not unreasonably be withheld. After the Confirmation Date and prior to substantial Consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, provided that the Debtor has received the prior written consent of Medpace, which consent shall not unreasonably be withheld, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court, which shall be reasonably acceptable in form and substance to Medpace.

### B. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, then the Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C. Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person or Entity.

## D. Payment of Statutory Fees

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or as soon as practicable after the Effective Date. The Debtor, prior to the Effective Date, and the Liquidating Trust, from and after the Effective Date, shall pay statutory fees to the U.S. Trustee in accordance with 28 U.S.C. § 1930 until the Chapter 11 Case is closed or converted and/or the entry of a final decree. Quarterly fees shall continue to accrue for the Debtor and be timely paid until the Debtor's case is closed, dismissed or converted. In addition, the Liquidating Trust shall File post-confirmation quarterly reports or any pre-confirmation monthly operating reports not Filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to File a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against the Debtor and its Estate.

## E. Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right, subject to the Plan Support Agreement [Docket No. 297], to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any claims held by the Debtor, Claims, Interests or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

## F. Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor, the Reorganized Debtor, the Liquidating Trust or Medpace shall be (a) in writing; (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service or (iv) first class mail; (c) deemed to have been duly given or made when actually delivered; and (d) addressed as follows:

***The Debtor***

John P. Hamill
Chief Executive Officer and
Chief Financial Officer
P.O. Box 400
Jamison, Pennsylvania 18929

with a copy to:

David R. Hurst, Esq.
Cole Schotz P.C.
500 Delaware Ave., Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131

***The Reorganized Debtor***

Mr. Stephen Ewald
Ms. Amy Callow
Medpace, Inc.
5375 Medpace Way
Cincinnati, Ohio 45227

with a copy to:

Todd A. Atkinson, Esq.
Ulmer & Berne LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Telephone: (216) 583-7000

***The Liquidating Trustee***

John P Hamill LLC
P.O. Box 400
Jamison, Pennsylvania 18929

with a copy to:

David R. Hurst, Esq.
Cole Schotz P.C.
500 Delaware Ave., Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131

***Medpace***

Mr. Stephen Ewald
Ms. Amy Callow
Medpace, Inc.
5375 Medpace Way
Cincinnati, Ohio 45227

with a copy to:

Todd A. Atkinson, Esq.
Ulmer & Berne LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Telephone: (216) 583-7000

**G. Plan Supplement(s)**

Exhibits and schedules to the Plan not attached hereto shall be Filed in one or more Plan Supplements by the Plan Supplement Filing Date. Any Plan Supplement (and amendments thereto) Filed by the Debtor shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein. Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the Debtor's case website (www.kccllc.net/NephroGenex) or the Court's website (www.deb.uscourts.gov). Copies of case pleadings, including the Plan Supplements, also may be examined between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday, excluding federal holidays, at the Office of the Clerk of the Court, 824 N. Market St., 3rd Floor, Wilmington, Delaware 19801. Finally, copies of case pleadings also may be obtained by written request to the Claims Agent, at nephrogenexinfo@kccllc.com. The documents contained in any Plan Supplements shall be approved by the Court pursuant to the Confirmation Order.

Dated: Wilmington, Delaware
February 17, 2017

NEPHROGENEX, INC.,
Debtor and Debtor-in-Possession

By: ***DRAFT***
John P. Hamill
Chief Executive Officer and
Chief Financial Officer

COLE SCHOTZ P.C.

By: ***DRAFT***
David R. Hurst (I.D. No. 3743)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131

– and –

Jacob S. Frumkin
1325 Avenue of the Americas
19th Floor
New York, New York 10019
Telephone: (212) 752-8000

*Counsel for the Debtor and Debtor-in-Possession*